[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT**
November 14, 2003
**THOMAS K. KAHN
CLERK**

No. 01-14602

D. C. Docket No. 91-00011 CR-WDO-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY PRINGLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(November 14, 2003)**

Before DUBINA, WILSON and KRAVITCH, Circuit Judges.

WILSON, Circuit Judge:

Appellant Jerry Pringle challenges the district court's denial of his *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) (hereinafter "motion to reduce"). We address two challenges raised by Pringle on appeal.

First, Pringle argues that the district court erred in calculating his original sentence by taking into account acts committed by Pringle's co-conspirators that were not "reasonably foreseeable" to Pringle in contravention of United States Sentencing Guideline § 1B1.3 (2002) ("U.S.S.G."). Second, Pringle argues that, even if such acts were reasonably foreseeable, his sentence should be reduced retroactively pursuant to Amendment 599 to § 2K2.4 of the Sentencing Guidelines.

The district court ruled that Pringle's sentence did not violate U.S.S.G. § 1B1.3 because the acts in question were in fact reasonably foreseeable to Pringle. In addition, the court ruled that Amendment 599 does not apply to the facts of Pringle's conviction, thereby making U.S.S.G. § 2K2.4 inapplicable. Thus, the court upheld Pringle's original sentence. We agree with the district court and affirm.

## I. BACKGROUND

On August 27, 1991, Jerry Pringle was convicted of three federal offenses arising out of a series of robberies in Georgia and North Carolina. These convictions resulted from four separate criminal incidents. On September 11, 1989, Pringle and his co-conspirators robbed the Liberty Savings Bank in Macon, Georgia. Pringle's personal involvement in the conspiracy ended here. After this

robbery, the following robberies or attempted robberies occurred: Cameron's Jewelry Store on February 9, 1990; Ron's Pawn Shop on March 16, 1990; and North Carolina National Bank on May 10, 1990.

Pringle was convicted of Counts One, Four, and Seven of the seven-count indictment. Count Four charged Pringle for robbery of the Liberty Savings Bank, in violation of 18 U.S.C. § 2113(a) and (d).[1] Count Seven separately charged Pringle for his use of a firearm during the robbery of Liberty Savings Bank, in violation of 18 U.S.C. § 924(c).[2] This was Pringle's only conviction under 18 U.S.C. § 924(c). Finally, Count One charged Pringle for conspiring to commit a burglary and six robberies in violation of the Hobbs Act, 18 U.S.C. § 1951,[3] some of which involved the use of firearms.

Adopting the probation officer's recommendations, the district court sentenced Pringle to a period of 168 months on Counts One and Four to run

---

[1] 18 U.S.C. § 2113(a) prevents the taking or attempted taking of any property or money by the use of force or violence. 18 U.S.C. § 2113(d) makes unlawful the "assault[] [of] any person . . . by the use of a dangerous weapon or device" in connection with an offense prohibited by 18 U.S.C. § 2113(a) and (b).

[2] 18 U.S.C. § 924(c) separately punishes the use or possession of a firearm during and in relation to any crime of violence or drug trafficking crime for which the person may be prosecuted.

[3] The Hobbs Act prohibits robbery or extortion, as well as attempts or conspiracies to commit robbery or extortion, that "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce." *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001) (quoting 18 U.S.C. § 1951) (citation omitted).

concurrently plus an additional sixty months sentence on Count Seven to run consecutively, for a total of 228 months. Consistent with U.S.S.G. § 1B1.2(d), the conspiracy count was treated as four "pseudo counts," one count each for the robberies of the Liberty Savings Bank, Cameron's Jewelry Store, Ron's Pawn Shop, and the North Carolina Bank. The court enhanced the base offense levels for the two conspiracy charges relating to the robberies of Cameron's Jewelry Store and the North Carolina Bank by three levels for a co-conspirator's possession of a firearm during each robbery. The court also enhanced the base offense level for the robbery of Ron's Pawn Shop by five levels for the discharge of a firearm, and by four levels for the bodily injury of store owner Ron Shirlen incurred as a result of the discharge. Without these enhancements, the combined adjusted offense level for the conspiracy charges would have been only 27 rather than 32, which would have reduced Pringle's sentencing guideline range from 135-168 months to 78-97 months, or a resulting sentence of approximately five years less. The use of a firearm during the Liberty Savings Bank robbery did not serve as the basis for any enhancement.

On August 11, 1994, we affirmed Pringle's sentence and conviction.[4] In February, 2001, Pringle filed *pro se* a motion to reduce his sentence pursuant to 18

---

[4] *United States v. Pringle*, 21 F.3d 1124 (Table) (11th Cir. 1994).

U.S.C. § 3582(c)(2). The district court denied this motion on June 5, 2001, and Pringle appealed. The district court analyzed this motion under the framework we established in *United States v. Diaz,*248 F.3d 1065 (11th Cir. 2001), and we do the same.

## II. DISCUSSION

Criminal defendants may be held liable for the reasonably foreseeable actions of their co-conspirators. *Diaz*, 248 F.3d at 1099 (citing *United States v. Bell*, 137 F.3d 1274, 1275 (11th Cir. 1998)). With respect to sentencing, U.S.S.G. § 1B1.3(a)(1)(B) requires that "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all *reasonably foreseeable* acts and omissions of others in furtherance of the jointly undertaken criminal activity" should be taken into account in calculating the defendant's appropriate sentence. *See United States v. Gallo*, 195 F.3d 1278, 1281 (11th Cir. 1999) (emphasis added). According to the United States Supreme Court, this "reasonable foreseeability requirement of § 1B1.3(a)(1)(B) [carries] the binding force of a legislative enactment." *Id.* at 1283-84 (citing *Williams v. United States*, 503 U.S. 193, 200-01 (1992)).

18 U.S.C. § 3582(c)(2) gives retroactive effect to certain amendments to the Sentencing Guidelines that lower the sentencing range upon which an earlier sentence was based.[5] Pringle's motion to reduce is based on Amendment 599 to § 2K2.4 of the Sentencing Guidelines (effective November 1, 2000). Amendment 599 is listed in U.S.S.G. § 1B1.10(c), making it one for which retroactive application may be appropriate. Amendment 599 was enacted to clarify under what circumstances a weapons enhancement may be applied to an underlying offense when the defendant has also received an 18 U.S.C. § 924(c) conviction, which provides separate punishment for the use or possession of a firearm in a violent crime. *See United States v. White*, 305 F.3d 1264, 1266 (11th Cir. 2002); *see also* U.S. SENTENCING GUIDELINES MANUAL supp. to app. C at 70 (2002).

In determining whether Pringle should be held accountable for his co-conspirators possession of a firearm during the robberies that formed the basis of Pringle's conspiracy conviction, we engage in a three-part analysis. We must determine (1) if Pringle was part of a jointly undertaken criminal activity, whether or not charged as a conspiracy; (2) whether the acts of Pringle's co-conspirators

---

[5] 18 U.S.C. § 3582(c)(2) allows a sentencing court to reduce a prisoner's term of imprisonment, consistent with the factors set forth in 18 U.S.C. § 3553(a), where the defendant has been sentenced pursuant to a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 944(o).

that took place after the robbery of Liberty Savings Bank were reasonably foreseeable to Pringle. If these first two factors are satisfied, we must then consider (3) whether Amendment 599 retroactively bars punishment for these acts. The jury answered the first two questions in the affirmative, and the district court affirmed those findings. The third issue is a matter of statutory interpretation and an issue of first impression in this circuit.

### A. JOINTLY UNDERTAKEN CRIMINAL ACTIVITY

To the extent Pringle argues that he was not a member of the conspiracy and hence cannot be found guilty of the acts of his co-conspirators, we find this argument to be without merit. To prove a Hobbs Act conspiracy under 18 U.S.C. § 1951, the government must prove that (1) two or more persons agreed to commit a robbery or extortion encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal. *Diaz*, 248 F.3d at 1084 (citing *United States v. To*, 144 F.3d 737, 747-48 (11th Cir. 1998); *United States v. Thomas*, 8 F.3d 1552, 1556 (11th Cir. 1993)).

Applying the appropriate standard of review,[6] in considering Pringle's

---

[6] Relying on *Diaz*, in reviewing the jury's finding that Pringle was involved in a Hobbs Act conspiracy, the district court asked "whether a reasonable jury could have concluded that the

motion to reduce his sentence, the district court properly found that there was more than sufficient evidence to uphold the jury's findings that a conspiracy existed and that Pringle was a knowing and willing participant in this conspiracy. There is abundant record testimony from numerous witnesses who testified about the exact details of the conspiracy, including various members of the conspiracy, family members of the defendants, witnesses to the crimes, and victims of the robberies. In addition, several witnesses, including one conspirator's girlfriend and another conspirator's mother, testified that Pringle was a member of "The Posse." Other witnesses close to the group testified as to Pringle's involvement in the group's criminal acts. One witness, for example, testified that her car was the one used by the conspirators in the Liberty Savings Bank robbery and that it was found after the robbery at Pringle's apartment complex. After reviewing the record and the district court's order, we affirm the district court's finding sustaining the jury's verdict of guilty for Pringle's conspiracy count, thereby satisfying the first element of our three-part test.[7]

_____

evidence established appellants' guilt beyond a reasonable doubt. The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor." *Diaz*, 248 F.3d at 1084 (citations omitted).

[7] We note that while withdrawal from a conspiracy would constitute a valid defense to subsequent crimes committed by the remaining conspirators, it requires proof of two elements: (1) that defendant has taken affirmative steps to defeat the objectives of the conspiracy, and (2) that defendant either made a reasonable effort to communicate these acts to his co-conspirators or

## B.     REASONABLE FORESEEABILITY

Pringle argues on appeal that the crimes occurring after the Liberty Savings Bank robbery were not reasonably foreseeable to him, and thus should not have served as the basis for a weapons enhancement.  Additionally, Pringle argues that because the use of a firearm by a co-conspirator at Ron's Pawn Shop was not foreseeable, the bodily injury that occurred as a result of its discharge was also not foreseeable, and therefore should not have led to an additional enhancement.

In order to determine the appropriate standard of review, we rely upon our lengthy analysis in *United States v. Williams*, 340 F.3d 1231 (11th Cir. 2003), which harmonized our precedents setting forth the proper standards for reviewing a district court's application of the sentencing guidelines.  Because the district court's determination of reasonable foreseeability is a mixed one of law and fact, we afford the appropriate amount of due deference to the district court's determination as required by 18 U.S.C. § 3742.[8]  The level of deference due with

---

disclosed the scheme to law enforcement authorities.  *United States v. Young*, 39 F.3d 1561, 1571 (11th Cir. 1994).  As conceded at oral argument, Pringle has not at any time raised sufficient evidence to support an argument that he withdrew from this conspiracy.  Accordingly, we will not disturb the jury's finding that Pringle was a member of this conspiracy.

[8] 18 U.S.C. § 3742(e) indicates that the deference due when we review a trial court's application of the sentencing guidelines depends on the nature of the question presented; questions of purely legal interpretation are subject to *de novo* review, while primarily factual determinations are governed by the clear error standard.  *Williams*, 340 F.3d at 1239.

respect to this particular issue is great because it is one "involving application of a fairly well-understood legal standard [i.e., reasonable foreseeability] to a complex factual scenario." *Williams*, 340 F.3d at 1239. Thus, consistent with *Williams*, we review the district court's finding for clear error. *Id.*

The district court found that the robberies of Cameron's Jewelry Store, Ron's Pawn Shop, and the North Carolina Bank were reasonably foreseeable to Pringle because long before joining the conspiracy, Pringle knew of the full scope of his co-conspirators' unlawful enterprise and yet still chose to join. Specifically, based on extensive trial testimony including Pringle's own statements, the district court found that Pringle knew several of the conspirators for years and was aware of their participation in the criminal group known as "The Posse." Further, just as in *Diaz*, the evidence before the jury established that weapons were used during the robbery of Liberty Savings Bank, establishing that such use was part of the criminal scheme. *See Diaz*, 248 F.3d at 1100. Thus, by voluntarily joining a group of known criminals who called themselves "The Posse," a group that had already committed several armed robberies, Pringle could reasonably be charged with anticipating that this conspiracy would continue and encompass more armed criminal acts in the future. Thus, the district court did not err by finding that the crimes committed subsequent to the Liberty Savings Bank robbery were

10

reasonably foreseeable to Pringle.

Pringle's challenge to the district court's finding points out the report of the probation officer finding that "[Pringle]'s only involvement in the offense was the robbery of Liberty Savings Bank. There is no evidence to support the defendant was involved in the planning or execution of the other crimes." (R1-179-7). Pringle's reliance upon this statement is misplaced. The issue of whether Pringle was involved in the planning or execution of the offenses for which he received a weapons enhancement is wholly separate from the issue of whether Pringle could have reasonably foreseen that his co-conspirators would commit these subsequent offenses, and do so using firearms. *See* U.S.S.G. § 1B1.3 comment 2 ("the criminal activity that the defendant agreed to jointly undertake, and the reasonably foreseeable conduct of others in furtherance of that criminal activity, are not necessarily identical"). We require more to rebut the district court's specific finding of reasonable foreseeability.

The district court did not err by finding that the crimes committed by Pringle's co-conspirators, and their use of weapons during those crimes, were in fact reasonably foreseeable to Pringle. Pringle offers no persuasive evidence to rebut the district court's finding. *See Diaz*, 248 F.3d at 1100 ("Camacho's convictions for carrying and using a firearm during the three episodes will be

11

upheld absent proof that such use during the Arias episode was not foreseeable").

## C.    APPLICATION OF AMENDMENT 599

Having satisfied the first two elements, we must now determine whether Amendment 599 to Note 2 of U.S.S.G. § 2K2.4 bars a weapons enhancement under the facts of this case, thereby requiring Pringle's sentence to be reduced. This is an issue of first impression in this circuit.

While primarily factual determinations call for due deference pursuant to 18 U.S.C. § 3742(e), the issue here, regarding the proper interpretation of Amendment 599, involves a purely legal interpretation of a sentencing guideline. As such, we review the district court's interpretation of Amendment 599 *de novo*. *See Williams*, 340 F.3d at 1239 ("[w]hen the district court's application of sentencing guidelines to facts involves primarily a legal decision, such as the interpretation of a statutory term, less deference is due to the district court than when the determination is primarily factual . . . ."); *see also White*, 305 F.3d at 1267 (reviewing *de novo* the district court's legal conclusions regarding the scope of its authority under the sentencing guidelines).

For the reasons stated below, we hold that Amendment 599 does not bar the district court from enhancing Pringle's conspiracy sentence for his co-

12

conspirator's use of a firearm during the robberies in which Pringle did not

personally participate and that did not form the basis of Pringle's § 924(c)

conviction.

Amendment 599 was enacted in order to clarify under what circumstances a

weapons enhancement may properly be applied to an underlying offense when the

defendant has also been convicted for the use or possession of a firearm pursuant

to 18 U.S.C. § 924(c), which carries a separate and consecutive punishment for

firearm use. *See* U.S. SENTENCING GUIDELINES MANUAL supp. to app. C at 70

(2002); *see also White*, 305 F.3d at 1266. Because Amendment 599 is

commentary that interprets or explains a sentencing guideline, it is binding on

federal courts. *See Stinson v. United States*, 508 U.S. 36, 38 (1993).

As amended by Amendment 599, Application Note 2 now states:

> If a sentence under this guideline [i.e., 18 U.S.C. § 924(c)] is imposed
> in conjunction with a sentence for an underlying offense [i.e., armed
> robbery], do not apply any specific offense characteristic for
> possession, brandishing, use, or discharge of an explosive or firearm
> when determining the sentence for the underlying offense [i.e.
> robbery].[9] A sentence under this guideline *accounts for any*
> explosive or *weapon enhancement for the underlying offense of*

---

[9] We have interpreted this first sentence to "reinforce[] what courts have always known –
when a defendant is convicted of a § 924(c) violation and an underlying offense, the *defendant's*
possession of a weapon cannot be used to enhance the level of the underlying offense." *Diaz*,
248 F.3d at 1106-07; *see also White*, 305 F.3d at 1266.

13

*conviction*, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).[10]  Do not apply any weapon enhancement in the guideline for the *underlying offense*, for example, if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c); or (B) in an ongoing drug trafficking offense, the defendant possessed a firearm other than the one for which the defendant was convicted under 18 U.S.C. § 924(c). *However, if a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924 (c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction.*

U.S. SENTENCING GUIDELINES MANUAL § 2K2.4, cmt., n.2, amend. 599 (2000) (emphasis added).

As applied to the facts before us, the various portions of Amendment 599 appear to create inconsistent results.  In order to resolve this issue and clarify the proper application of Amendment 599 for future litigants, we will discuss each relevant portion of Amendment 599 as quoted above.  We note that the starting point for statutory interpretation is the language of the statute itself.  *See, e.g., Watt v. Alaska*, 451 U.S. 259, 265 (1981).

We first focus on the final sentence of Amendment 599.  Pringle was

---

[10] Pursuant to U.S.S.G. § 1B1.3 (a)(1)(B), relevant conduct includes "in the case of a jointly undertaken criminal activity (a criminal plan . . . or enterprise . . . whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  Accordingly, relevant conduct for Pringle would include all reasonably foreseeable acts and omissions of every co-conspirator.

convicted under 18 U.S.C. § 924(c) for personally possessing a firearm in connection with the robbery of Liberty Savings Bank, but he also received a weapons enhancement for the three conspiracy convictions in which he did not personally participate. A weapons enhancement would, without question, be appropriate were the last sentence of Amendment 599 to read, "However, if a defendant is convicted of two armed bank robberies, *whether committed as substantive violations or as part of a conspiracy conviction*, but is convicted under 18 U.S.C. § 924 (c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction." (italicized portion added to text for illustration purposes). Pringle, however, was not convicted of two separate armed robbery charges, and the text of Amendment 599 does not make clear whether a separate *conspiracy* conviction should be treated like a second *armed robbery* conviction. Without the underlined portion above, the proper application of Amendment 599 is unclear, and we must therefore turn to other sources, including the purpose of Amendment 599, to determine its proper meaning.[11]

---

[11] When a statute is vague or ambiguous, other interpretative tools may be used, including an examination of the act's purpose and of its legislative history. *See Napier v. Preslicka,* 331 F.3d 1189, 1190 (11th Cir. 2003) (Barkett, J., dissenting from denial of rehearing en banc); *see also Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir. 1993).

Amendment 599 was adopted in order to "avoid . . . duplicative punishment." U.S. SENTENCING GUIDELINES MANUAL supp. to app. C at 70 (2002). More specifically, Amendment 599 was promulgated in order to prevent "double counting" for firearms use in any *one criminal event.* Thus, Amendment 599 allows for weapon enhancements for all robberies except for the one robbery that served as the basis for Pringle's § 924(c) conviction.

This interpretation is bolstered by example (A) within Amendment 599. Example (A) states that, where a defendant has been convicted under 18 U.S.C. § 924(c), as in this case, the district court should not apply any weapon enhancements *"for the underlying offense . . .* if (A) a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under 18 U.S.C. § 924(c)." Thus, it would have been impermissible double counting if the district court had (1) convicted and sentenced Pringle for the robbery of Liberty Savings Bank under 18 U.S.C. § 2113; (2) imposed a separate sentence for Pringle's use of a firearm in connection with the Liberty Savings Bank robbery under 18 U.S.C. § 924(c); and *also* (3) applied a weapons enhancement to Pringle's 18 U.S.C. § 2113 Liberty Savings Bank conviction for a co-conspirators use of a separate firearm in the Liberty Savings Bank robbery. We rejected this very scenario in *United States v. Le*,

16

which involved only one robbery resulting in a § 924(c) conviction and a weapon enhancement. *United States v. Le*, 256 F.3d 1229, 1239 (11th Cir. 2001). This case is distinguishable from *Le* because here, the underlying offense that received the enhancements – conspiracy to commit the robberies of Cameron's Jewelry Store, Ron's Pawn Shop, and North Carolina National Bank – was *different* than the offense that formed the basis of Appellant's 18 U.S.C. § 924(c) conviction – the robbery of Liberty Savings Bank. Thus, there was no impermissible "double counting," the prevention of which is the real concern of Amendment 599.

This case is also distinguishable from *United States v. Diaz*. The *Diaz* court struck down a five-level weapons enhancement applied to Hobbs Act and carjacking convictions. *Diaz*, 248 F.3d at 1107-09. In *Diaz*, we noted, "relevant conduct [i.e. possession of a firearm] cannot be used to enhance the offense level of the underlying offense. In the instant case, the district court could not enhance the offense level for the Hobbs Act conspiracy, substantive Hobbs Act violations, and carjacking convictions of one appellant based on the fact that a co-appellant brandished or possessed a weapon [in these particular criminal offenses]." *Id.* at 1107. Unlike *Diaz*, Pringle received weapons enhancements only in connection with the robberies for which he did not receive 18 U.S.C. § 924(c) convictions.

As such, the district court properly rejected Pringle's Amendment 599 argument.[12]

## III.   CONCLUSION

The district court properly found that Pringle was part of a jointly undertaken criminal conspiracy, the acts of Pringle's co-conspirators that took place after the robbery of Liberty Savings Bank were reasonably foreseeable, and Amendment 599 does not retroactively bar punishment for such acts. Because no amendment listed in U.S.S.G. § 1B1.10(c) applies, a reduction in Pringle's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not appropriate. *See* U.S.S.G. § 1B1.10(a). For the foregoing reasons, we affirm the district court's denial of Pringle's motion to reduce his sentence and refuse to alter Pringle's sentences as imposed on December 20, 1991.

AFFIRMED.

---

[12] Moreover, Pringle conceded at oral argument that Amendment 599 does not apply.